**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| S.C. JOHNSON & SON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 09-286-GPM |
| | ) | |
| THOMAS H. BUSKE and SARA E. BUSKE, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

## I. INTRODUCTION

This matter is before the Court on the motion to dismiss brought by Defendant Sara E. Buske

(Doc. 16). Plaintiff S.C. Johnson & Son, Inc. ("S.C. Johnson") brings this action alleging that it has

been the target of a long-standing and ongoing scheme of deception by Sara Buske and her husband

Defendant Thomas H. Buske. According to S.C. Johnson's operative complaint in this cause,

in 2004 S.C. Johnson, a Wisconsin-based manufacturer of household products, filed suit in

Wisconsin state court against Thomas Buske, the owner of companies that provided trucking

services for S.C. Johnson, charging that Buske had defrauded S.C. Johnson by bribing

S.C. Johnson's employees to do business with Buske's companies in return for kickbacks from

Buske. S.C. Johnson alleges that Sara Buske was an active participant in the fraudulent scheme

through such activities as giving cash derived from the scheme and gift cards to department stores

to S.C. Johnson employees as a reward for steering trucking business to Thomas Buske's companies.

In 2008, S.C. Johnson alleges, a Wisconsin jury awarded a judgment of $203.8 million against

Thomas Buske and his companies.  S.C. Johnson alleges further that Sara and Thomas Buske have engaged in various activities to avoid satisfying the Wisconsin judgment, including:  Thomas Buske invoking the Fifth Amendment in response to questions concerning the location of his assets; Sara and Thomas Buske converting their marital home in Edwardsville, Illinois, which is valued at approximately $1.7 to $1.8 million, from a tenancy in common to a tenancy by the entirety to prevent S.C. Johnson from levying or executing upon the Buskes' home in partial satisfaction of the judgment; and Sara and Thomas Buske filing for divorce in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, as a device for Thomas Buske to transfer assets to Sara Buske out of reach of Thomas Buske's judgment creditor, S.C. Johnson.

S.C. Johnson's operative complaint in this case contains four counts.  The first count alleges a fraudulent conveyance by Sara and Thomas Buske in violation of 735 ILCS 5/12-112 in connection with their conversion of their marital home from a tenancy in common to a tenancy by the entirety to protect the house from execution by S.C. Johnson.  The second count asserts a claim for imposition of a constructive trust against Sara and Thomas Buske in the amount of $27.4 million, which represents according to S.C. Johnson the amount directly received by Sara and Thomas Buske as proceeds of the fraudulent scheme underlying the judgment against Thomas Buske.  The third and fourth counts of the complaint, which are directed solely against Sara Buske, allege conspiracy to commit fraud and fraud, respectively.  Federal subject matter jurisdiction is asserted on the basis of diversity of citizenship.   Sara Buske has moved to dismiss S.C. Johnson's complaint on numerous grounds, specifically:  the "domestic relations" exception to federal diversity jurisdiction; the *Rooker-Feldman* doctrine; *Colorado River* abstention; claim preclusion or issue preclusion; the statute of limitations; and failure to plead fraud with particularity.  The motion has been fully briefed

and is ripe for decision.  Having reviewed carefully the submissions of the parties, the Court now rules as follows.

## II. Analysis

### A.        Challenges to the Court's Subject Matter Jurisdiction

Because "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause," *Ball v. Southwest Fiduciary, Inc.*, Civil No. 09-194-GPM, 2009 WL 1708764, at *1 (S.D. Ill. June 17, 2009), the Court turns first to Sara Buske's challenges to the existence of subject matter jurisdiction in this case on the basis of the domestic relations exception to diversity jurisdiction and the *Rooker-Feldman* doctrine.   Rule 12 of the Federal Rules of Civil Procedure authorizes dismissal of a claim for lack of subject matter jurisdiction on a party's motion or on a court's own initiative.  *See* Fed. R. Civ. P. 12(b)(1), (h)(3).  In evaluating a motion to dismiss under Rule 12(b)(1) "the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citing *Rueth v. EPA*, 13 F.3d 227, 229 (7th Cir. 1993)).  *See also United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).  In order to determine if subject matter jurisdiction exists, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue[.]"  *Ezekiel*, 66 F.3d at 897.  *See also Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993); *Freiburger v. Emery Air Charter, Inc.*, 795 F. Supp. 253, 256-57 (N.D. Ill. 1992).  If the factual basis for subject matter jurisdiction is contested, the plaintiff has the burden of bringing forward "competent proof" of the existence of subject matter jurisdiction. *Johnson v. Equitable Life Assurance Soc'y of U.S.*, No. 96 C 2418, 1997

WL 417409, at *2 (N.D. Ill. July 22, 1997).  In other words, a plaintiff must prove to the court by "a preponderance of the evidence . . . that jurisdiction exists." *Villasenor v. Industrial Wire & Cable, Inc.*, 929 F. Supp. 310, 312-13 (N.D. Ill. 1996) (quoting *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995)).  *See also Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, Civil No. 08-832-GPM, 2009 WL 2431993, at *2 (S.D. Ill. July 31, 2009); *Trustees of Marion Kingdom Hall of Jehovah's Witnesses v. City of Marion*, Civil No. 07-530-GPM, 2007 WL 4569718, at *2 (S.D. Ill. Dec. 26, 2007).

### 1.    Domestic Relations Exception to Diversity Jurisdiction

Federal diversity jurisdiction requires, of course, that all parties to an action be of completely diverse citizenship, that is, no plaintiff may be a citizen of the same state as any defendant, and an amount in excess of $75,000, exclusive of interest and costs, be in controversy.  *See* 28 U.S.C. § 1332; *Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 835 (S.D. Ill. 2006); *Cassens v. Cassens*, 430 F. Supp. 2d 830, 832-33 (S.D. Ill. 2006).  The operative complaint in this case alleges that S.C. Johnson is a corporate citizen of Wisconsin, *see* 28 U.S.C. § 1332(c)(1), and that Sara and Thomas Buske are citizens of Illinois.  Similarly, the amount in controversy in this case is well in excess of the jurisdictional minimum for diversity purposes, given that the first and second counts of S.C. Johnson's operative complaint concern sums in the amount of $1.7 to $1.8 million and $27.4 million, respectively.  Thus, it appears the prerequisites for the exercise of jurisdiction in diversity are met in this case.  However, Sara Buske contends in her motion to dismiss that S.C. Johnson's claims concerning a fraudulent conveyance in violation of 735 ILCS 5/12-112 and for imposition of a constructive trust against Sara and Thomas Buske come within the so-called "domestic relations" exception to diversity jurisdiction, which holds generally that "[t]he whole

subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 692 (1992) (quoting *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890)).  The usual explanation of the origins of the domestic relations exception to diversity jurisdiction is both historical and statutory.  The first judiciary act conferred on the federal courts jurisdiction in diversity as to "suits of a civil nature at common law or in equity" in 1789; this, the explanation goes, meant suits within the jurisdiction of the English common-law and chancery courts of the time, which did not extend to cases concerning domestic relations and probate matters, as such cases instead were within the exclusive jurisdiction of English ecclesiastical courts.  *Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006) (quoting Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 78).  As the United States Court of Appeals for the Seventh Circuit has noted on more than one occasion, the traditional explanation of the origins of the domestic relations exception to diversity jurisdiction rests on at least two curious historical assumptions, namely, that the jurisdiction of the new American federal courts was intended to be delimited by that of ecclesiastical courts, and English ecclesiastical courts at that.  *See Lloyd v. Loeffler*, 694 F.2d 489, 491-92 (7th Cir. 1982); *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).  As we know, however, "[t]he life of the law has not been logic:  it has been experience," O. Holmes, *The Common Law* 1 (1881), and, however dubious the historical pedigree of the domestic relations exception to diversity jurisdiction, it has come down to us, we are told, through ratification by Congress of a long-standing judicial construction of the scope of the statute granting diversity jurisdiction.  *See Ankenbrandt*, 504 U.S. at 695-701; *Jones*, 465 F.3d at 307.

The Seventh Circuit Court of Appeals customarily has regarded the domestic relations exception as having both a core and a penumbra.  "The core is occupied by cases in which the

plaintiff is seeking in federal district court under the diversity jurisdiction one or more of the distinctive forms of relief associated with the domestic relations jurisdiction:   the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998).  "The penumbra of the exception consists of ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." *Id*.  This case obviously does not lie within the core of the domestic relations exception, as the Court is not being asked to issue a decree as to divorce, alimony, or child custody.  *See Ankenbrandt*, 504 U.S. at 704 ("[T]he domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree[.]").  Neither does this case lie within the penumbra of the exception, as this is not a case that would be required in state court to be brought as ancillary to a divorce proceeding.  *See Friedlander*, 149 F.3d at 740.  This is simply a suit to collect a judgment that S.C. Johnson doubtless would have brought regardless of whether Sara and Thomas Buske were divorcing; indeed, if S.C. Johnson's allegations are to be believed (and for purposes of the instant motion, as noted, they must be) S.C. Johnson's attempts to collect its judgment are in fact the reason the Buskes are seeking a divorce.

The Court's conclusion that this case is not within the domestic relations exception to diversity jurisdiction is bolstered by the recent decision of the Supreme Court of the United States in *Marshall v. Marshall*, 547 U.S. 293 (2006).  The *Marshall* case dealt with the so-called "probate exception" to diversity jurisdiction, which holds generally that a federal court cannot entertain in diversity jurisdiction a suit to probate a will or administer an estate, an exception to diversity jurisdiction that is closely related to and shares the same historical justification as the domestic

relations exception to diversity jurisdiction.  *See id*. at 305-09.  In *Marshall* the Court set out a simple test for determining whether a case fits within the probate exception to diversity jurisdiction (and, implicitly, the domestic relations exception also):  first, whether a federal plaintiff seeks an in personam judgment against a defendant, as opposed to relief seeking to reach a res in the custody of a state court, such as the probate or annulment of a will; and second, whether sound policy considerations, namely, the special proficiency of state courts with respect to the issues presented by a case, militate in favor of applying an exception to diversity jurisdiction to that case.  *See id*. at 312.  The *Marshall* Court specifically held that a claim based on a "widely recognized tort" such as tortious interference with an expectancy of an inheritance or gift is outside the probate exception to diversity jurisdiction.  *Id*.

Applying the *Marshall* standard in this case, it is apparent that this case does not fit within one of the traditional exceptions to diversity jurisdiction.  First, S.C. Johnson is seeking in personam relief against Sara and Thomas Buske based on, with respect to the second count of S.C. Johnson's operative complaint, the widely recognized common-law remedy of imposition of a constructive trust to prevent unjust enrichment.  *See* Restatement (First) of Restitution § 1 (1937); *Dr. Franklin Perkins Sch. v. Freeman*, 741 F.2d 1503, 1516-17 (7th Cir. 1984).  Second, S.C. Johnson's claims of a fraudulent conveyance and for imposition of a constructive trust are not within the special proficiency of a state court.  This case is simply a civil action for damages, not, as already has been noted, a specialized family-court matter.  In *Ankenbrandt* the Court addressed the policy considerations underlying the domestic relations exception, noting that the issuance of divorce, alimony, or child custody decrees "not infrequently involves retention of jurisdiction by the court and deployment of social workers to monitor compliance." 504 U.S. at 703-04.  "As a matter of

judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Id*. at 704. The claims in this case do not implicate these policy concerns, and this Court is quite as capable as an Illinois state court of applying the relevant Illinois law. *See Kim Littlefield, DMD, P.C. v. Orthodontic Ctrs. of Ill., Inc.*, Civil No. 06-606-GPM, 2007 WL 273766, at *4 (S.D. Ill. Jan. 26, 2007) (noting the presumption that coordinate courts are equally competent to apply the law). The Court concludes that the domestic relations exception to diversity jurisdiction does not apply in this case.

### 2.     The *Rooker-Feldman* Doctrine

In addition to invoking the domestic relations exception to diversity jurisdiction, Sara Buske also challenges the Court's subject matter jurisdiction with respect to S.C. Johnson's claims of a fraudulent conveyance and for imposition of a constructive trust in the first and second counts of S.C. Johnson's operative complaint on the basis of the so-called *Rooker-Feldman* doctrine, the familiar principle that the lower federal courts lack subject matter jurisdiction to sit in review of state-court judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603-04 (7th Cir. 2008); *James v. Illinois Sexually Dangerous Persons Act*, Civil No. 09-40-GPM, 2009 WL 2567910, at *2 (S.D. Ill. Aug. 19, 2009). According to Sara Buske, this Court is being asked by S.C. Johnson to sit in review of the proceedings in Sara and Thomas Buske's divorce action in state court in Madison County. This argument for dismissal of S.C. Johnson's claims need not detain the Court long. In the first place, the *Rooker-Feldman*

doctrine does not apply when the state-court proceedings that a federal court allegedly is called upon to review have not yet terminated. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (stating that application of the *Rooker-Feldman* doctrine is limited to situations in which "the losing party in state court filed suit in federal court after the state proceedings ended."). Here it appears from the record that Sara and Thomas Buske's divorce action in Madison County remains pending and thus the *Rooker-Feldman* doctrine does not apply.

Moreover, because the *Rooker-Feldman* doctrine is not coextensive with the doctrine of res judicata or claim preclusion, in the Seventh Circuit a *Rooker-Feldman* bar applies only when a federal plaintiff's injury was caused by a state court; the doctrine is inapplicable when the federal plaintiff's "injury was not caused by the state court, but by its adversary's conduct[.]" *Zurich Am. Ins. Co. v. Superior Court for State of Cal.*, 326 F.3d 816, 822 (7th Cir. 2002). *See also Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir. 1996) (explaining that the *Rooker-Feldman* doctrine bars federal-court jurisdiction only where a plaintiff alleges an injury due to a state court's judgment, not when the plaintiff alleges an injury due to an adversary's conduct from which the plaintiff failed to obtain relief in state court); *GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 729 (7th Cir. 1993) (the *Rooker-Feldman* doctrine does not apply where a federal plaintiff alleges merely that he or she "suffer[ed] an injury out of court and then fail[ed] to get relief from state court," only when the injury of which the federal plaintiff complains was "caused *by* the judgment" of the state court) (emphasis in original). Here S.C. Johnson alleges that it has been injured by the conduct of Sara and Thomas Buske in the Madison County court, not that it has been injured by the Madison County court, and accordingly, the *Rooker-Feldman* doctrine does not bar this Court's exercise of jurisdiction. The Court concludes that it has subject matter jurisdiction in this case.

### B.    *Colorado River* Abstention

As is not infrequently the case in actions in which the probate exception or domestic relations exception is invoked as a bar to the exercise of subject matter jurisdiction, Sara Buske asks in the alternative that the Court abstain from exercising its jurisdiction. *See, e.g., Rice v. Rice Found.*, 610 F.2d 471, 477-78 (7th Cir. 1979). Specifically, she requests that the Court abstain pursuant to the doctrine enunciated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), that in "exceptional" circumstances a federal court may refrain from exercising jurisdiction in the interest of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817-18. In her view, this Court should stay this action in deference to Sara and Thomas Buske's pending divorce proceedings in the state court in Madison County. In this Circuit a motion to abstain from exercising jurisdiction commonly is construed as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See, e.g., Williams v. Pucinski*, No. 01 C 5588, 2002 WL 1585571, at *2 (N.D. Ill. July 12, 2002); *Beres v. Village of Huntley, Ill.*, 824 F. Supp. 763, 766 (N.D. Ill. 1992). The Court believes it probably is more correct to construe a request for abstention, which is not among the defenses enumerated in Rule 12(b), as being addressed to the inherent power of a federal court to control the disposition of the cases on the docket with the economy of time and effort for all parties concerned. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (3d ed. 1998 and Supp. 2009) (collecting cases). However, in the context of *Colorado River* abstention it must be remembered that a court's discretion to stay or dismiss proceedings is strictly circumscribed, given that "the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,'" *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 15 (1983) (quoting *Colorado River*, 424 U.S. at 817), a duty that gives rise, in turn, to a "presumption . . . against abstention." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 430 (7th Cir. 1993).[1]

In determining whether to abstain under *Colorado River*, a court's inquiry proceeds in two parts. Initially, a court must determine whether concurrent state and federal actions are parallel. *See LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989); *Day v. Union Mines Inc.*, 862 F.2d 652, 655 (7th Cir. 1988); *Document Generation Corp. v. AllMeds, Inc.*, Civil No. 07-841-GPM, 2009 WL 2848997, at *4 (S.D. Ill. Sept. 1, 2009). Suits are "'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum[.]" *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)) (emphasis omitted). The test is whether there is "a substantial likelihood that the . . . state court . . . litigation will dispose of all claims presented in the federal case." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005). *See also Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1985). Importantly, if there is "any substantial doubt that the [state] litigation will be . . . an adequate vehicle for the complete and prompt resolution of the issues between the parties," then it would be a "serious abuse of discretion . . . to abstain under *Colorado River*," and therefore, the suits should not be considered parallel. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518, 520 (7th Cir. 2001) (quoting *Moses H. Cone*, 460 U.S.

---

1.    This perhaps is the place to note that the Seventh Circuit Court of Appeals has expressed a strong preference that, in cases where *Colorado River* abstention is appropriate, a federal court stay proceedings before it rather than dismiss them. *See CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 851-52 (7th Cir. 2002).

at 28).  Further, any doubt regarding whether the state and federal actions are parallel "should be resolved in favor of exercising jurisdiction."  *Id.* at 520 (citing *Allen v. Board of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995)).

If a court determines that concurrent federal and state proceedings are parallel, then in determining the appropriateness of *Colorado River* abstention the court should balance numerous factors, including:  whether a state court presiding over a parallel proceeding has assumed jurisdiction over property; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; the order in which jurisdiction was obtained by the concurrent forums; the source of governing law; the adequacy of the state court action to protect the federal plaintiff's rights; the relative progress of state and federal proceedings; the presence or absence of concurrent jurisdiction; the availability of removal; and the vexatious or contrived nature of the federal claim.  *See Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc*., 180 F.3d 896, 898-99 (7th Cir. 1999); *LaDuke*, 879 F.2d at 1559; *Johns v. Johns Mitchell*, No. 06-924-GPM, 2007 WL 496391, at *4 (S.D. Ill. Feb. 13, 2007).  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling [sic] against that exercise is required." *Caminiti*, 962 F.2d at 701 (quoting *Colorado River*, 424 U.S. at 818-19).  The decision to abstain under *Colorado River* is committed to a court's discretion, *see Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990) (citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665 (1978)), although in weighing the relevant factors the court must bear in mind that the balance is "heavily weighted in favor of the exercise of jurisdiction."  *Board of Educ. of Valley View Cmty. Unit Sch. Dist. No. 365U v. Bosworth*, 713 F.2d 1316, 1321 (7th Cir. 1983) (quoting *Moses H. Cone*, 460 U.S. at 16).  *See also*

*Colorado River*, 424 U.S. at 820 (observing that federal courts have a "heavy obligation to exercise jurisdiction").

The Court turns then to the matter of whether this case and the proceedings in Madison County are parallel. The Court recognizes that the *Colorado River* doctrine does not require perfect symmetry between concurrent proceedings in federal and state court. *See Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) (noting that "it is not necessary that there be . . . formal symmetry between the two actions" for *Colorado River* abstention to apply); *AAR Int'l*, 250 F.3d at 518 ("Suits need not be identical to be parallel, . . . and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel."). Rather, as already has been noted, "a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum," and in determining whether this standard is met "a district court should examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006). In this instance, the record of this case, which, as noted, the Court is required to construe most strongly against abstention, does not support the conclusion that the requisite parallelism of parties exists between the Madison County action and this action. It appears from documents submitted to the Court by Sara Buske in support of her motion to abstain that on October 14, 2008, S.C. Johnson moved to intervene in the Madison County action.[2] It further

_____

2.   The Court assumes that it can judicially notice documents filed in the Madison County action. *See 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2000); *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 n.6 (7th Cir. 1996); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

appears that on October 20, 2008, S.C. Johnson's motion to intervene in the Madison County proceedings was granted.   On March 19, 2009, S.C. Johnson served on the parties to the Madison County proceedings a complaint in intervention seeking a judicial declaration that:  the divorce proceedings initiated by Sara and Thomas Buske are fraudulent and collusive and have been instituted for the purpose of shifting assets away from Thomas Buske and his judgment creditor S.C. Johnson to Sara Buske; S.C. Johnson's $203.8 million judgment against Thomas Buske is a marital debt of Sara Buske and Thomas Buske; certain companies owned by Thomas Buske are not marital property; and assets procured by Sara Buske and Thomas Buske through alleged fraud against S.C. Johnson are not part of the marital estate.   However, according to an order entered in the Madison County case on February 2, 2009, which has been submitted to the Court by S.C. Johnson, the judge presiding over the Madison County action has determined that as a third-party corporate entity S.C. Johnson lacks standing to challenge Sara and Thomas Buske's divorce proceedings as collusive and has prohibited S.C. Johnson from serving interrogatories on the Buskes except with the state court's permission and from presenting or examining witnesses at proceedings on the dissolution of the Buskes' marriage.   In an order entered June 22, 2009, which also has been submitted to the Court by S.C. Johnson, the state-court judge reiterated that S.C. Johnson has no standing to challenge the dissolution proceedings and that S.C. Johnson may be present at the hearing on dissolution but may not raise objections, present evidence and testimony, and examine witnesses at the dissolution hearing.   Under these circumstances, then, it is very difficult for the Court to ascertain to what extent S.C. Johnson is in substance rather than form a party to the divorce action in Madison County and hence to what extent the Madison County case is parallel to this one for purposes of the *Colorado River* doctrine.

The Seventh Circuit Court of Appeals has typically found parallelism between state and federal actions in cases in which the "posture of the parties is reversed, so that the defendant in the state suit has become the plaintiff in the federal suit," *Calvert Fire Ins. Co. v. American Mut. Reinsurance Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979), or when one of the two cases includes parties or claims additional to those in the other case. *See, e.g., Schneider Nat'l Carriers*, 903 F.2d at 1156; *Interstate Material*, 847 F.2d at 1288; *Lumen Constr.*, 780 F.2d at 695. However, the Court is not aware of any Seventh Circuit authority holding that where, as appears to be the case here, a plaintiff in a federal action, although nominally a party to a state-court proceeding, is not being accorded the rights of a full party to the state-court action, the federal and state actions are parallel for purposes of *Colorado River* abstention.[3]   As matters stand now, it appears that neither S.C. Johnson nor any party with which it is in privity currently enjoys the right to participate fully in the state-court litigation.  Under these circumstances, in which abstention would effectively deprive S.C. Johnson of a judicial remedy, the Court entirely fails to see how abstention would further the interests of wise judicial administration, conservation of judicial resources, and comprehensive disposition of litigation underlying the *Colorado River* doctrine.  Correspondingly, under these circumstances the Court cannot conclude that Sara Buske has met her burden to show the "clearest of justifications" for abstention.  *Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 549 (7th Cir. 1997).  *See also Growe v. Emison*, 507 U.S. 25, 32 (1993)

---

3.    The Court wishes to emphasize that it is not criticizing the state-court judge's determination that S.C. Johnson, as a corporate intervenor, lacks standing to object to the dissolution of the Buskes' marriage on grounds of collusion.  This decision may be, for all the Court knows, entirely correct as a matter of law.  The Court's point is simply that as a result of the state-court judge's decision it appears that S.C. Johnson has something less than the rights of a full party to the Madison County proceedings.

(abstention is proper only in "rare circumstances"); *Ankenbrandt*, 504 U.S. at 705 ("[T]he federal courts have a . . . virtually unflagging obligation . . . to exercise the jurisdiction given them."). The Court therefore declines in its discretion to abstain under the *Colorado River* doctrine in favor of the Madison County proceedings.[4]

### C.     Failure to State a Claim Upon Which Relief Can Be Granted

In addition to challenging the Court's subject matter jurisdiction and requesting abstention, Sara Buske also moves to dismiss S.C. Johnson's claims on the grounds that:  S.C. Johnson's fraudulent conveyance claim is barred by the doctrine of claim preclusion or issue preclusion; S.C. Johnson's claims of fraud and conspiracy are barred by the statute of limitations; and S.C. Johnson has failed to plead fraud with particularity.  The Court construes these challenges to S.C. Johnson's complaint as being brought under the subsection of Rule 12 of the Federal Rules of Civil Procedure authorizing dismissal of a complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, the Court accepts all well-pleaded allegations in a plaintiff's complaint as true.  *See Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002).  The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case.  *See Gibson v. City of Chicago*, 910 F.2d

---

[4]    For much the same reason the Court finds that this case and the Madison County case are not parallel, the Court also would find, were it to consider the ten enumerated factors to be weighed in evaluating the propriety of *Colorado River* abstention, that the factors do not weigh in favor of abstention, particularly the factor of the adequacy of the Madison County action to protect the federal plaintiff's rights.  As discussed, it appears that at this time neither S.C. Johnson nor any party with which it is in privity currently enjoys the right to participate fully in the state-court litigation, so that the state-court litigation is inadequate to protect S.C. Johnson's interests.  Under the circumstances of this case the Court would attach preeminent weight to this factor.  *See Schneider Nat'l Carriers*, 903 F.2d at 1157 ("The weight to be given any one factor is determined solely by the circumstances of the particular case – there is no mechanical formula by which to determine when a stay is appropriate.").

1510, 1520 (7th Cir. 1990).  A complaint should not be dismissed unless it either fails to provide adequate notice – as has been required consistently under Rule 8 of the Federal Rules of Civil Procedure – or does not contain "enough facts to state a claim to relief that is plausible on its face," that is, the claim has not been "nudged . . . across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  *See also EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the . . . grounds . . . of his . . . entitle[ment] to relief . . . requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do[.]"  *Twombly*, 550 U.S. at 555 (citations omitted).  With this standard in mind, the Court turns to consideration of the remaining grounds asserted by Sara Buske for dismissal of S.C. Johnson's claims.

### 1.      Claim Preclusion or Issue Preclusion

Sara Buske asserts that under principles of claim preclusion or issue preclusion orders of the Madison County court bar the first count of S.C. Johnson's operative complaint in this case, which, as noted, alleges a fraudulent conveyance by Sara and Thomas Buske in violation of 735 ILCS 5/12-112 in connection with the conversion of the Buskes' marital home from a tenancy in common to a tenancy by the entirety in order, S.C. Johnson contends, to protect the house from being levied on to satisfy S.C. Johnson's judgment against Thomas Buske.  As a general rule, the preclusive effect to be given a state-court order is determined by the law of preclusion of the state where the order was rendered.  *See* 28 U.S.C. § 1738; *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Harper v. Godfrey Co.*, 45 F.3d 143, 149 (7th Cir. 1995); *Special Souvenirs,*

*Inc. v. Town of Wayne*, 56 F. Supp. 2d 1062, 1081 (E.D. Wis. 1999). Because the divorce proceedings in the Madison County action are ongoing, under Illinois law the Court can accord neither claim preclusive effect nor issue preclusive effect to the state-court orders that Sara Buske contends are preclusive as to this case. Under Illinois law, for claim preclusion or, as it is more traditionally known, res judicata to apply, three requirements must be met: (1) a final adjudication on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of the parties or their privies. *See Hudson v. City of Chicago*, 889 N.E.2d 210, 213 (Ill. 2008) (citing *Downing v. Chicago Transit Auth.*, 642 N.E.2d 456, 458 (Ill. 1994)). Under Illinois law, issue preclusion or collateral estoppel applies when "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication." *Bajwa v. Metropolitan Life Ins. Co.*, 804 N.E.2d 519, 532 (Ill. 2004) (citing *American Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000)). *See also Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995) (citing *Ballweg v. City of Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986)) (noting that Illinois law does not accord issue preclusive or collateral estoppel effect to non-final orders); *Dwyer v. Evoy*, 12 F. Supp. 2d 832, 834-35 (N.D. Ill. 1998) (same); *Sloan v. Durkin*, No. 94 C 5876, 1996 WL 284973, at *5 (N.D. Ill. May 24, 1996) (same). Absent a final judgment in the Madison County case, neither claim preclusion nor issue preclusion is applicable in this case.[5]

---

5.    The Court notes that the Illinois rule denying issue preclusive effect to non-final orders differs from Seventh Circuit law governing the preclusive effect of non-final orders of a federal court. Under Seventh Circuit law, an order of a federal court may be given issue-preclusive effect if, though non-final, it is "sufficiently firm to be accorded conclusive effect." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003) (quoting

### 2.      Statute of Limitations

Sara Buske seeks dismissal on the grounds of the statute of limitations of S.C. Johnson's claims against her for conspiracy to defraud and fraud, which, as noted, are asserted in the third and fourth counts, respectively, of S.C. Johnson's operative complaint in this case.  In diversity cases, of course, a federal court must apply state law governing both the limitations period applicable to a claim for relief and accrual of the claim for purposes of the statute of limitations.  *See Moser v. Universal Eng'g Corp.*, 11 F.3d 720, 724 n.6 (7th Cir. 1993) (observing that "state law barring an action because of a statute of limitations is sufficiently 'substantive' in the *Erie* sense that a federal court in that state exercising diversity jurisdiction must respect it.").   The limitations period furnished by Illinois law with respect to S.C. Johnson's claims of fraud and conspiracy to defraud is five years.  *See* 735 ILCS 5/13-205; *Fitton v. Barrington Realty Co.*, 653 N.E.2d 1276, 1278 (Ill. App. Ct. 1995); *Pfeifer v. Bell & Howell Co.*, 368 N.E.2d 520, 522 (Ill. App. Ct. 1977).  Under Illinois law, a plaintiff's claim accrues for purposes of the statute of limitations when all of the elements of a cause of action are present.  *See MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006); *Wolf v. Bueser*, 664 N.E.2d 197, 204 (Ill. App. Ct. 1996); *Draper v. Frontier Ins. Co.*, 638 N.E.2d 1176, 1180 (Ill. App. Ct. 1994);

---

Restatement (Second) of Judgments § 13 (1980)).  *See also Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n.*, 804 F.2d 390, 393 (7th Cir. 1986).  At this juncture, however, the Court is concerned with Illinois law, which, as discussed, does not accord issue preclusive effect to non-final orders.  Also, even under Seventh Circuit law, generally an interlocutory order will be deemed sufficiently firm to be accorded issue preclusive effect only if the order has been or could have been the subject of appellate review.  *See Bridgestone/Firestone*, 333 F.3d at 767; *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979); *Asllani v. Board of Educ. of City of Chicago*, 845 F. Supp. 1209, 1216 (N.D. Ill. 1993).  Here the orders of the Madison County court that Sara Buske claims are preclusive as to this case clearly are interim orders and there is no reason to suppose that they have been or could have been reviewed by a higher court.

*Lincoln-Way Cmty. High Sch. Dist. 210 v. Village of Frankfort*, 367 N.E.2d 318, 323 (Ill. App. Ct. 1977).  However, Illinois recognizes, of course, the "discovery rule," whereby the statute of limitations does not begin to run until a plaintiff knows or reasonably should know of a wrongfully-caused injury.  *See, e.g., Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1139 (Ill. 1995); *Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 979-80 (Ill. 1981); *D.P. v. M.J.O.*, 640 N.E.2d 1323, 1326 (Ill. App. Ct. 1994); *Walters v. Marion Mem'l Hosp.*, 577 N.E.2d 915, 917-18 (Ill. App. Ct. 1991).[6]

As a general rule affirmative defenses normally are not resolved at the pleading stage, although a plaintiff's claims may be disposed of under Rule 12(b)(6) if the complaint contains facts which demonstrate that those claims are barred by the statute of limitations.  *See Walker v. Thompson*, 288 F.3d 1005, 1009-10 (7th Cir. 2002); *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995); *Jimenez v. Herrera*, No. 95 C 1956, 1996 WL 99715, at *5 (N.D. Ill.

---

6.    The Court assumes that Illinois law governs the issue of the statute of limitations.  This is consistent with the general rule followed in Illinois state courts, whose choice-of-law rules this Court must apply in this diversity case, *see Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Kalmich v. Bruno*, 553 F.2d 549, 552 (7th Cir. 1977), that statutes of limitations are matters of procedure, so that an Illinois court will apply the relevant limitations period under Illinois law.  *See Mackereth v. G.D. Searle & Co.*, 674 N.E.2d 936, 938 (Ill. App. Ct. 1996); *Jackson v. Shuttleworth*, 192 N.E.2d 217, 218-19 (Ill. App. Ct. 1963); *Wetzel v. Hart*, 190 N.E.2d 619, 621 (Ill. App. Ct. 1963).  The Court notes that the traditional rule that statutes of limitations are procedural, warranting the application of forum law, is not consistent with more contemporary ideas regarding choice of law, *see* Restatement (Second) of Conflict of Laws § 142 (1971), which Illinois has shown a willingness to adopt in recent years.  *See, e.g., Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 692 (Ill. App. Ct. 1999).  However, the parties have not pointed to a body of law other than that of Illinois as controlling the issue of limitations, and therefore the Court assumes that Illinois law governs the issue.  *See Highland Supply Corp. v. Kurt Weiss Greenhouses, Inc.*, Civil No. 08-859-GPM, 2009 WL 2365244, at *2 n.1 (S.D. Ill. Apr. 28, 2009) (citing *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993)) (where parties have not identified a conflict of laws, a court need not make a choice of law).

Mar. 4, 1996); *EEOC v. Park Ridge Pub. Library*, 856 F. Supp. 477, 480 (N.D. Ill. 1994). *See also*

*Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). Here it is not clear from

the face of S.C. Johnson's operative complaint that its claims against Sara Buske for fraud and

conspiracy to defraud are time-barred and indeed there clearly is a sharp factual dispute between the

parties as to when S.C. Johnson discovered or reasonably could have discovered Sara Buske's role

in the fraudulent scheme that the Wisconsin court found that Thomas Buske had carried out against

S.C. Johnson. Accordingly, the question of whether S.C. Johnson's claims against Sara Buske for

fraud and conspiracy to defraud are time-barred cannot be resolved at the pleading stage and must

be left for resolution at a later stage of this case. *See Adams v. Cavanagh Cmtys. Corp.*, 847 F. Supp.

1390, 1396 (N.D. Ill. 1994) (citing *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718

(7th Cir. 1993)) ("Unless a plaintiff pleads facts that show his case is time-barred, . . . a statute of

limitations defense is best addressed on a motion for summary judgment.").

Additionally, and without deciding the issue at this time, the Court notes that the facts alleged

in S.C. Johnson's operative complaint suggest that there may be grounds here for the application of

the so-called "continuing tort" or "continuing violation" doctrine, which provides generally, of

course, that where a tort involves a continuing or repeated injury, the limitations period does not

begin to run until the date of the last injury or the date the tortious acts cease. *See Feltmeier v.*

*Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003); *Kidney Cancer Ass'n v. North Shore Cmty. Bank &*

*Trust Co.*, 869 N.E.2d 186, 189-90 (Ill. App. Ct. 2007); *Blair v. Nevada Landing P'ship*, 859 N.E.2d

1188, 1192-93 (Ill. App. Ct. 2006); *Gredell v. Wyeth Labs., Inc.*, 803 N.E.2d 541, 547

(Ill. App. Ct. 2004); *Hyon Waste Mgmt. Servs., Inc. v. City of Chicago*, 574 N.E.2d 129, 132

(Ill. App. Ct. 1991). In the particular context of a claim of civil conspiracy, this means that "[t]he

statute of limitations . . . runs from the commission of the last overt act alleged to have caused damage." *MBL (USA) Corp. v. Diekman*, 484 N.E.2d 371, 376 (Ill. App. Ct. 1985) (quoting *Austin v. House of Vision, Inc.*, 243 N.E.2d 297, 299 (Ill. App. Ct. 1968)).  *See also Keeran v. Wahl Co.*, 51 N.E.2d 598, 600-01 (Ill. App. Ct. 1943) (in an action alleging civil conspiracy, holding that the complaint stated a claim for relief where the defendants were alleged to have committed overt acts in furtherance of the conspiracy during the limitations period and were still committing such acts at the time the complaint was filed).  *Cf. Scherer v. Balkema*, 840 F.2d 437, 439 (7th Cir. 1988) (in an action alleging a conspiracy to violate civil rights, explaining that "[i]njury and damage in a civil conspiracy action flow from the overt acts . . . of a conspiracy . . . . Consequently, the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff[.]"). The allegations of S.C. Johnson's operative complaint assert the commission by Sara Buske and her co-conspirator Thomas Buske of a number of overt acts aimed at defrauding S.C. Johnson continuing virtually to the present day, including, as discussed:  instituting divorce proceedings as a device for Thomas Buske to transfer assets to Sara Buske out of reach of Thomas Buske's judgment creditor, S.C. Johnson; converting the Buskes' marital home from a tenancy in common to a tenancy by the entirety to prevent S.C. Johnson from levying or executing upon the Buskes' home in partial satisfaction of S.C. Johnson's judgment against Thomas Buske; and invoking the Fifth Amendment in order to hide the location of Thomas Buske's assets.  However, it bears repeating, the Court makes no decision at this time about the applicability vel non of the continuing violation doctrine to S.C. Johnson's claims for fraud and conspiracy to defraud against Sara Buske.  For the reasons stated, the Court declines to dismiss those claims on the pleadings based upon the statute of limitations.

### 3.      Pleading Fraud with Particularity

As a final matter, the Court addresses Sara Buske's contention that S.C. Johnson has failed to plead the fourth count of its operative complaint in this cause, alleging common-law fraud against her, with the particularity required by Rule 9 of the Federal Rules of Civil Procedure, which provides, in relevant part, that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  *See also Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 682-83 (7th Cir. 1992).  The purpose of Rule 9(b) is to ensure both that allegations of fraud are grounded in adequate pre-filing investigation and that a party accused of fraud has sufficient notice of the specific activity that a plaintiff claims constitutes fraud so that the accused party may file an effective responsive pleading.  *See Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005); *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999); *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *Crichton v. Golden Rule Ins. Co.*, Civil No. 06-264-GPM, 2006 WL 2349961, at *4 (S.D. Ill. Aug. 11, 2006).  Rule 9(b) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires, of course, only a short and plain statement of a plaintiff's claim.  *See Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975); *Brown v. SBC Communications, Inc.*, No. 05-cv-777-JPG, 2007 WL 684133, at *6 (S.D. Ill. Mar. 1, 2007).  When Rule 9 is read in conjunction with Rule 8, the former mandates merely that a plaintiff must plead the "bare bones" of a fraudulent scheme, by supplying "a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants," the reason being that under the liberal discovery provisions of the Federal Rules of Civil Procedure, "[m]ore information can be gathered through discovery."  *Tomera*, 511 F.2d at 508, 509.

In this instance, S.C. Johnson's allegations of fraud display sufficient pre-filing investigation and furnish an adequate sketch of the fraudulent scheme in which Sara Buske is alleged to have been involved and the role she and others have supposedly played in it. Considering the complaint as a whole, the Court finds it extraordinarily unlikely that she is not on notice of the conduct alleged by S.C. Johnson to be fraudulent. Moreover, the requirements of Rule 9(b) generally are relaxed where facts pertinent to a plaintiff's claim of fraud are in the exclusive possession of a defendant and can be disclosed only through discovery. As the Seventh Circuit Court of Appeals has explained, Rule 9(b) is not intended to "create a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery . . . that she could not conduct before filing the complaint." *Emery v. American Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). *See also Corley v. Rosewood Care Ctr., Inc*., 142 F.3d 1041, 1051 (7th Cir. 1998); *Uni*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918, 923 (7th Cir. 1992). Under the particular circumstances of this case, where both Sara Buske and Thomas Buske are alleged to have gone to remarkable lengths (even to the extent of the latter's invoking the Fifth Amendment against attempts to discover his assets), it seems likely to the Court that S.C. Johnson has pleaded to the extent of its knowledge at this time, and more information will have to be garnered through discovery. *See Morrison v. YTB Int'l, Inc.*, Civil Nos. 08-565-GPM, 08-579-GPM, 2009 WL 2244471, at *3 (S.D. Ill. June 5, 2009) (finding that claims of statutory consumer fraud were sufficient under Rule 9(b) where the complaint displayed adequate pre-filing investigation and supplied a sketch of the alleged fraudulent scheme and the role each defendant supposedly played in it, and the plaintiffs had pleaded to the limits of their knowledge). In sum, S.C. Johnson's allegations of fraud withstand scrutiny under Rule 9(b).

### III. CONCLUSION

Sara Buske's motion to dismiss for lack of subject matter jurisdiction, to abstain, and to dismiss for failure to state a claim upon which relief can be granted (Doc. 16) is **DENIED**.

**IT IS SO ORDERED.**

DATED:  September 17, 2009

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge